**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

| | | |
|---|---|---|
| **JOSHUA MYERS** and **RAYMOND TOMPKINS**, on behalf of themselves and others similarly situated, | : : : : | |
| Plaintiffs, | : : | **CASE NO. 1:20-cv-429** |
| v. | : : : | **JUDGE MATTHEW W. MCFARLAND** |
| **AMERICAN EAGLE PLUMBING & DRAIN CLEANING, LLC**, *et al.*, | : : : : | |
| Defendants. | : | |

**JOINT MOTION FOR APPROVAL OF FLSA**
**COLLECTIVE ACTION SETTLEMENT AND BRIEF IN SUPPORT**

Representative Plaintiffs Joshua Myers and Raymond Tompkins (collectively "Representative Plaintiffs") and Defendants American Eagle Plumbing & Drain Cleaning, LLC; American Eagle Plumbing and Drain Cleaning of Dayton Inc.; American Eagle Plumbing and Drain Cleaning of Florida, LLC; Bashir Salem; and Nazek Salem (collectively "Defendants") (collectively with Representative Plaintiffs, the "Parties") respectfully move this Court for an Order approving their Fair Labor Standards Act ("FLSA") settlement. The settlement was reached by experienced wage and hour counsel during arms-length, good faith negotiations with the assistance of a United States Magistrate Judge.

The following documents are submitted for the Court's approval:

**Exhibit 1**: Joint Stipulation of Settlement and Release (the "Settlement")[1] with the following Exhibit:

**Exhibit 1-A**: List of all Plaintiffs;

---

[1] Unless otherwise noted, all capitalized words and phrases used throughout this Joint Motion and Brief shall have the same meanings as set forth in the Joint Stipulation of Settlement and Release.

Page **1** of **13**

**Exhibit 2**: Declaration of Adam C. Gedling; and

**Exhibit 3**: Proposed Order.

## MEMORANDUM IN SUPPORT

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

    **A.     Summary of the Claims and Procedural History**

On May 27, 2020, Representative Plaintiffs filed a Complaint (the "Action") against Defendants, on behalf of themselves and other similarly situated current and former commissioned plumbing technicians ("Technicians").[2]

In the Action, Representative Plaintiffs alleged that Defendants failed to pay hourly, non-exempt Technicians minimum and overtime wages for all hours worked in excess of forty (40) in a workweek in violation of the Fair Labor Standards Act, §§ 201, *et seq.* Specifically, Representative Plaintiffs alleged that Defendants violated the FLSA by taking illegal deductions from Technicians' pay, resulting in them being paid less than minimum wage, and by failing to record all of their hours worked, which resulted in Technicians not being paid one-and-one-half times (1.5x) their regular rates of pay for all hours worked over forty (40) in a workweek.[3] Defendants deny these allegations and assert that they have properly paid their Technicians, including Representative Plaintiffs, for all hours worked.

On December 2, 2020, this Court issued an Order granting the Parties' joint motion for conditional certification of this case as a collective action.[4] Notice and consent forms were sent to the FLSA Collective Members. Ultimately, eight (8) individuals ("Opt-In Plaintiffs"), including Representative Plaintiffs,[5] joined the lawsuit.

---

[2] ECF No. 1; Declaration of Adam C. Gedling (hereinafter "Gedling Decl."), Ex. 2, ¶ 9.
[3] ECF No. 1, ¶¶ 31–44; Gedling Decl., Ex. 2, ¶¶ 10–11.
[4] ECF No. 12. These technicians will collectively be referred to as the "FLSA Collective Members."
[5] Representative Plaintiffs and Opt-In Plaintiffs will collectively be referred to as "Plaintiffs."

The Parties agreed to mediate this Action with The Honorable Karen L. Litkovitz, United States Magistrate Judge. Prior to the mediation, Defendants provided time and compensation records for Plaintiffs, and Plaintiffs' Counsel analyzed the data to calculate a damages analysis. After multiple mediation sessions, the Parties reached a Settlement.[6]

B.  **Summary of the Key Settlement Terms**

The total settlement amount is $70,000.00. This amount includes: (a) all Individual Payments to Plaintiffs; (b) Representative Plaintiffs' Class Representative Payments; and (c) Plaintiffs' Counsel's attorneys' fees and expenses.[7]

The amount of unpaid overtime and minimum wages due to Plaintiffs, if any, were the primary disputes between the Parties. The Individual Payments, after all deductions are made (as set forth in the Settlement), reflect approximately forty-seven percent (47%) of Plaintiffs' alleged overtime damages, which represents the value of approximately five (5) hours of additional unpaid overtime hours each workweek that they respectively worked during the relevant time period.[8] This amount of time was settled upon as a reasonable compromise based on information learned during the mediation, settlement discussions, the realities of Defendants' financial position, and the discovery process. Plaintiffs will receive a proportional payment based on their number of workweeks worked in the relevant time period and their respective rates of pay. This type of allocation is commonly used in class and collective action settlements.[9] This recovery is fair and reasonable. *See Smith v. SAC Wireless, LLC*, No. 20-10932, 2022 WL 1744785, at *3 (E.D. Mich. May 31, 2022) (citing *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1609, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010)) (finding a recovery to be "fair and reasonable" where it

---

[6] Gedling Decl., Ex. 2, ¶¶ 12–14.
[7] *Id.*, ¶¶ 16–17.
[8] The relevant time period is from July 21, 2017 to September 29, 2022.
[9] Gedling Decl., Ex. 2, ¶ 20.

Page 3 of 13

"greatly exceed[ed] the typical 7-11% recovery in FLSA cases[]"); *see also Yorba v. Barrington Sch., LLC*, No. 2:21-cv-691, 2022 WL 2436952, at *5 (S.D. Ohio July 5, 2022) (Sargus, J.) (discussing *Smith*, 2022 WL 1744785, at *3) (referencing the same typical recovery of 7-11% in FLSA cases).

In exchange for the Total Settlement Amount in the Settlement (i.e., $70,000.00), this Action will be dismissed with prejudice, and Plaintiffs will release Defendants from federal, state, and local wage-and-hour claims, rights, demands, liabilities, and causes of action that were asserted, or could have been asserted, in this lawsuit. Further, Representative Plaintiffs will execute a general release in exchange for their individual payments, as well as Class Representative Payments of $1,500 each.

## II. PROPRIETY OF APPROVAL OF THE SETTLEMENT

The Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. Court approval is warranted on all scores.

### A. The Seven-Factor Standard Is Satisfied

The court presiding over an FLSA action may approve a proposed settlement of the action under Section 216(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Ents., Inc.*, No. C2-05-500, 2008 WL 2468868, at *1 n.1 (S.D. Ohio June 16, 2008) (Sargus, J.) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353–55 (11th Cir. 1982) (stating that the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946)).

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008). The

Sixth Circuit uses seven (7) factors to evaluate class action settlements, which are as follows:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992); and *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983)); *Crawford*, 2008 WL 4724499, at *3.

The Settlement satisfies each of these elements.

1. *No Indicia of Fraud or Collusion Exists.*

There is no indicia of fraud or collusion, and "[c]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *Bailey v. Black Tie Mgmt. Co. LLC*, No. 2:19-cv-1677, 2020 WL 4673163, at *2 (S.D. Ohio Aug. 12, 2020) (Sargus, J.) (quoting *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006)). The Settlement was achieved only after arm's-length, good faith negotiations between the Parties, with the assistance of Magistrate Judge Litkovitz.[10] As such, there is no indicia of fraud or collusion, and this factor favors approval.

2. *The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval.*

The policy favoring settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. *See Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *3 (S.D. Ohio Aug. 17, 2018) (Watson, J.) ("[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them") (citations omitted).

---

[10] *Id.*, ¶ 22.

If this case had not settled, the Parties would be required to engage in costly litigation, such as additional written discovery, depositions, dispositive motions, trial, and potential appeals. The Settlement, on the other hand, provides substantial relief to the Plaintiffs promptly and efficiently as well as amplifies the benefits of that relief through the economies of class resolution.[11]

        3.    *Investigation Was Sufficient to Allow the Parties to Act Intelligently.*

The Parties engaged in substantial investigation and analysis prior to negotiating the Settlement. Specifically, Defendants produced the necessary payroll and timekeeping information for Plaintiffs, and Plaintiffs' Counsel built a damages model that was used in guiding the Parties' negotiations.[12]

In addition, the Parties assessed their potential risk of loss. Thus, the legal and factual issues in the case were thoroughly researched by counsel for the Parties, and all aspects of the dispute are well understood by both sides.

        4.    *The Risks of Litigation Favor Approval.*

The Settlement represents a compromise of disputed claims. Specifically, Representative Plaintiffs allege that they and other hourly Technicians were not compensated for all work that they performed, did not receive minimum wage for all hours worked, and were not paid overtime pay for all hours worked over 40 in a workweek. On the other hand, Defendants deny these allegations and assert that they fully compensated Plaintiffs for all time worked.[13]

The Parties also disagree about whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applies, whether liquidated damages are appropriate, whether some or all of the employees are exempt, and whether the claims

---

[11] *Id.*, ¶¶ 24–26.
[12] *Id.*, ¶¶ 12–13.
[13] *Id.*, ¶ 24.

alleged can proceed collectively.[14]

There are substantial disputes between the parties about the merits of Plaintiffs' claims and the measure of potential damages. Accordingly, if this case had not settled, it is possible that there would be no recovery for Plaintiffs at all.[15]

### 5. *The Opinion of Plaintiffs' Counsel Favors Approval.*

Plaintiffs' Counsel is highly experienced in wage-and-hour collective and class actions. At all times, they have acted in good faith and vigorously represented the interests of Plaintiffs. Importantly, Plaintiffs' Counsel opined that the settlement is fair, reasonable, adequate, and in the best interests of Plaintiffs.[16] "The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference." *Wright*, 2018 WL 3966253, at *5. Accordingly, this factor favors approval of the settlement.

### 6. *The Reaction of Absent Class Members Favors Approval.*

If the Court approves the settlement, the Plaintiffs will receive a payment that reflects approximately forty-seven percent (47%) of their overtime wage damages, which represents five (5) hours of unpaid overtime for each workweek that they respectively worked during the relevant time period. Plaintiffs' Counsel has not received any indication that Plaintiffs would object to such payment.

### 7. *The Public Interest Favors Approval.*

"Public policy generally favors settlement of class action lawsuits." *Wright*, 2018 WL 3966253, at *5 (quoting *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007) (Beckwith, J.)). Like in *Wright*, "the settlement confers immediate benefits on the Plaintiffs, avoids the risks

---

[14] *Id.*
[15] *Id.*, ¶ 28.
[16] *Id.*, ¶¶ 15, 24.

and expense in further litigation, and conserves judicial resources." *Id.* Thus, as in *Wright*, the Court should find that this factor supports approval of the Settlement.

      **B.**      **The Settlement Distributions Are Fair, Reasonable, and Adequate**

In addition to evaluating the seven (7) factors discussed above, the Court must also "ensure that the distribution of the settlement proceeds is equitable." *Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 WL 4721208, at *6 (S.D. Ohio Sept. 9, 2016) (Marbley, J.) (citations omitted).

      1.      *The Individual Payments are reasonable and adequate.*

As part of its pre-mediation evaluation, Plaintiffs' Counsel reviewed the class data provided by Defendants' counsel. Damages were calculated by calculating each Plaintiff's overtime rate of pay and adding unpaid work to every workweek that each Plaintiff respectively worked during the relevant time period. Although Defendants contend that Plaintiffs are not owed anything, the Parties agreed to a settlement amount that reflects approximately forty-seven percent (47%) of their alleged overtime wage damages, which is based on five (5) hours of unpaid work for each workweek that they respectively worked during the relevant time period. This amount of time was settled upon as a reasonable compromise based on the information learned during mediation, settlement discussions, the realities of Defendants' financial position, and discovery.[17] This recovery is fair and reasonable. *See Smith*, 2022 WL 1744785, at *3 (citing *Dillworth*, 2010 WL 776933, at *8) (finding a recovery to be "fair and reasonable" where it "greatly exceed[ed] the typical 7-11% recovery in FLSA cases[]"); *see also Yorba v. Barrington Sch., LLC*, No. 2:21-cv-691, 2022 WL 2436952, at *5 (S.D. Ohio July 5, 2022) (Sargus, J.) (discussing *Smith*, 2022 WL 1744785, at *3) (referencing the same typical recovery of 7-11% in FLSA cases).

All individual payments will be calculated proportionally based on the number of

---

[17] *Id.*, ¶¶ 13, 20, 24.

workweeks each Plaintiff worked during the relevant time period and their respective rates of pay.[18] As such, each Plaintiff will obtain compensation for alleged unpaid wages that are proportional to the number of workweeks he or she worked during the relevant time period.

2. *Representative Plaintiffs' service awards are proper and reasonable.*

The Agreement provides for a service award of $1,500.00 to each Representative Plaintiff in addition to their individual payments.[19] Courts routinely approve service awards to named plaintiffs in class and collective actions because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 WL 6485159, at *8 (S.D. Ohio Dec. 3, 2019) (Vascura, M.J.) (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)). Service awards are meant to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Id.* (quoting *Dillworth*, 2010 WL 776933, at *7).

Here, Representative Plaintiffs contributed significant time, effort, and detailed factual information that enabled Plaintiffs' Counsel to evaluate the strength of this case and reach a settlement of this matter. Further, Representative Plaintiffs attended multiple mediation sessions, which also helped enable a settlement in this matter.[20]

3. *The attorneys' fees to Plaintiffs' Counsel are proper and reasonable.*

After the Court has confirmed that the terms of the Settlement are fair to Plaintiffs, it may review the Settlement as to the provision of attorneys' fees and costs/expenses to Plaintiffs' Counsel.

---

[18] *Id.*, ¶ 20.
[19] *Id.*, ¶ 17.
[20] *Id.*, ¶ 17.

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). In *Fegley v. Higgins*, the Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied*, 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984)).

Per the Settlement, Representative Plaintiffs request payment of attorneys' fees to Plaintiffs' Counsel in the amount of one-third (1/3) of the total settlement amount, or $23,333.33.[21] A one-third fee award is "typical for attorney's fees in common fund, FLSA collective actions in this District." *Hebert v. Chesapeake Operating, Inc.*, No. 2:17-cv-852, 2019 WL 4574509, at *8 (S.D. Ohio Sept. 20, 2019) (Morrison, J.); *see Morse v. NTI Services, Corp.*, No. 2:20-cv-02173, 2021 WL 4350485, at *2 (S.D. Ohio Sept. 17, 2021) (Sargus, J.) (finding attorney fees award that represents one-third of the total settlement amount are reasonable); *Bailey v. Paradies Shops, LLC*, No. 2:20-cv-2610, 2021 WL 3662466, at *6 (S.D. Ohio Aug. 18, 2021) (Deavers, M.J.) (finding a one-third attorney fees request to be reasonable and noting that "[d]istrict courts have approved collective and class actions fee requests when the fee is one-third of the total settlement amount"). Simply put, this case "is a normal fee amount in a wage and hour case." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 WL 6310376, at *5 (S.D. Ohio Nov. 25, 2019) (Rice, J.) (citing *Carr v. Bob Evans Farms, Inc.*, No. l:17-cv-1875, 2018 WL 7508650 (N.D. Ohio July 27, 2018)); *see also Ganci*, 2019 WL 6485159, at *7 (approving an award of 33 1/3% of a

---

[21] *Id.*, ¶ 29.

settlement fund in a wage and hour case); *Call v. CTA Pizza, Inc.*, No. 2:18-cv-00696, 2019 WL 5307071, at *5 (S.D. Ohio Oct. 21, 2019) (Marbley, C.J.) (same); *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 WL 1614822, at *6 (N.D. Ohio Mar. 26, 2019) (same); *Wright*, 2018 WL 3966253, at *6–7 (same); *Osman v. Grube, Inc.*, No. 3:16-cv-00802, 2018 WL 2095172, at *3–5 (N.D. Ohio May 4, 2018) (same); *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09CV1608, 2010 WL 2490989, at *7–8 (N.D. Ohio June 15, 2010) (same).

Plaintiffs' Counsel accepted this case on a contingency fee basis and advanced all litigation fees, costs, and expenses. Thus, Plaintiffs' Counsel "assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award." *Ganci*, 2019 WL 6485159, at *7.

Finally, courts in this district acknowledge that "wage and hour class and collective actions, such as this, are inherently complex and time-consuming." *Brandenburg*, 2019 WL 6310376, at *3. Given the inherent complexity of a wage and hour collective action and the disputed issues of fact and law in this case, an award of one-third (1/3) of the Settlement Fund appropriately compensates Plaintiffs' Counsel for its prosecution of this case and advances the public's interests in rewarding attorneys who bring wage and hour cases. *See, e.g.*, *Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 WL 2532922, at *4 (S.D. Ohio June 24, 2011) (Black, J.) ("[S]ociety has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

    4.    <u>*The Court should authorize reimbursement to Plaintiffs' Counsel of its out-of-pocket expenses incurred in this case.*</u>

Plaintiffs' Counsel should also be reimbursed its litigation expenses, which as of the date of this Joint Motion are $692.66. These litigation expenses were reasonable and necessary to

prosecute the case and were primarily comprised of the filing fee, service of a subpoena, and the cost of notice distribution following conditional certification.[22]

"Under the common fund doctrine, [Plaintiffs'] Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." *Brandenburg*, 2019 WL 6310376 at *7. In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Id.* Because Plaintiffs' Counsel's litigation expenses were incurred in the prosecution of the claims in this case and in obtaining the settlement, the Court should award reimbursement of these expenses to Plaintiffs' Counsel.

### III. CONCLUSION

The Parties submit that the Settlement is a fair and reasonable resolution of the disputed issues, which is consistent with the goal of securing the just, speedy, and inexpensive determination of every action. Accordingly, the Parties request that this Court: (1) enter the Proposed Order Granting Joint Motion for Approval of Collective Action Settlement and Dismissal with Prejudice; (2) approve Plaintiffs' Counsel's request for attorneys' fees and expenses; (3) approve the requested service payments to Representative Plaintiffs; and (4) retain jurisdiction to enforce the Settlement, if necessary.

Respectfully submitted,

| COFFMAN LEGAL, LLC | DINSMORE & SHOHL LLP |
|---|---|
| */s/ Adam C. Gedling* | */s/Jeremy D. Smith* |
| Matthew J.P. Coffman (0085586) | Michael B. Mattingly (0089847) |
| Adam C. Gedling (0085256) | Jeremy D. Smith (0088539) |
| Kelsie N. Hendren (100041) | 255 East Fifth Street, Suite 1900 |
| 1550 Old Henderson Rd. | Cincinnati, OH 45202 |
| Suite 126 | 513.977.8200 |
| Columbus, OH 43220 | 513.977.8141 (Fax) |

---

[22] *Id.*, ¶ 31.

| | |
|---|---|
| 614.949.1181<br>614.386.9964 (Fax)<br>Email: mcoffman@mcoffmanlegal.com<br>        agedling@mcoffmanlegal.com<br>        khendren@mcoffmanlegal.com<br><br>*Attorneys for Representative Plaintiffs*<br>*and others similarly situated* | michael.mattingly@dinsmore.com<br>jeremy.smith@dinsmore.com<br><br>*Attorneys for Defendants* |

## CERTIFICATE OF SERVICE

    I hereby certify that on this 2nd day of February 2023 a true and accurate copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                            /s/ *Adam C. Gedling*
                                            Adam C. Gedling